# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

GREGORY TYREE BROWN, _____

(Name of Plaintiff)

BERNARD WARNER, Secretary of
Corrections;  ELDON VAIL, Secretary
of Corrections;  HAROLD CLARKE,
Secretary of Corrections;  MAGGIE
MILLER-STOUT, Superintendent,
Airway Heights Corrections Center;
JAMES KEY, Associate Superintendent
PAUL DUENICH, Lieutenant;  DONNA
BYRONES, Major Hearings Officer;
TERESA JACOBSON, Major Hearings
Clerk;  JAMES WESTFALL, Sergeant;
MARK SHODAHL, and OFFICERS REEVES,
RAMSEY. MARTIN. and CLUEVER.

(Names of Defendants)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER UNDER 42
U.S.C. § 1983**

## CV-13-130-CI

### I. Previous Lawsuits:

A. Have you brought any other lawsuits in any federal court in the United States while a prisoner:

☒ Yes    ☐ No

B. If your answer to A is yes, how many?: <u>Don't Know</u> Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff <u>GREGORY TYREE BROWN</u>

Defendants <u>See attached "Civil Rights Complaint"</u>

RECEIVED

MAR 29 2013

CLERK, US DISTRICT COURT
SPOKANE, WASHINGTON

1(a)

2. Court (give name of District)

See attached "Civil Rights Complaint"

3. Docket Number   See attached "Civil Rights Complaint"

4. Name of judge to whom case was assigned   See attached "Civil Rights Complaint"

5. Disposition (For example: Was the case dismissed as frivolous or for failure to state a claim? Was it appealed? Is it still pending?)

See attached "Civil Rights Complaint"

6. Approximate date of filing lawsuit   See attached "Civil Rights Complaint"

7. Approximate date of disposition   See attached "Civil Rights Complaint"

II. **Place of Present Confinement:**   Clallam Bay Corrections Center

A. Is there a prisoner grievance procedure available at this institution?   ☑ Yes   ☐ No

B. Have you filed any grievances concerning the facts relating to this complaint?

☑ Yes   ☐ No

If your answer is NO, explain why not _____

C. Is the grievance process completed?   ☑ Yes   ☐ No

If your answer is YES, ATTACH A COPY OF THE FINAL GRIEVANCE RESOLUTION for any grievance concerning facts relating to this case.

III. **Parties to this Complaint**

A. Name of Plaintiff:   GREGORY TYREE BROWN   Inmate No.: 281829

Address: CBCC, 1830 Eagle Crest Way, Clallam Bay, WA 98326

(In Item B below, place the full name of the defendant, his/her official position, and his/her place of employment. Use item C for the names, positions and places of employment of any additional defendants. Attach additional sheets if necessary.)

B. Defendant   See attached Civil Rights Complaint   official position   see attached Civil Rights Complaint   place of employment   See attached Civil Rights Complaint

C. Additional defendants  *See attached Civil Rights Complaint*

IV.  Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved.  Do not give any legal arguments or cite any cases or statutes.  If you allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets if necessary.)

*See attached Civil Rights Complaint*

**V. Relief**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

See attached civil Rights complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _25th_ day of _March_ , 20 _2013_

_(Signature of Plaintiff)_

4 (a)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

GREGORY TYREE BROWN,                    )
                                        )    NO.
              Plaintiff,                 )
                                        )    CIVIL RIGHTS COMPLAINT
       -vs-                              )       (42 U.S.C. §1983)
                                        )
BERNARD WARNER, Secretary of             )
Corrections;  ELDON VAIL, Secretary     )
of Corrections;  HAROLD CLARKE,          )
Secretary of Corrections;  MAGGIE        )
MILLER-STOUT, Superintendent,            )
Airway Heights Corrections Center;       )
JAMES KEY, Associate Superintendent;     )
PAUL DUENICH, Lieutenant;  DONNA          )
BYRONES, Major Hearings Officer;         )
TERESA JACOBSON, Major Hearings          )
Clerk;  JAMES WESTFALL, Sergeant;        )
MARK SHODAHL, and OFFICERS REEVES,       )
RAMSEY, MARTIN, and CLUEVER, in their    )
individual and official capacities;     )
                                        )
              Defendants.                )
_____ )

## I.  INTRODUCTION

1.  This is a civil rights action brought under 42 U.S.C. §1983, by Gregory Tyree Brown, a state prisoner alleging prison officials violate his constitutional, statutory and common law rights by:  (a) confiscating and destroying his personal property pursuant to established state procedure under DOC Policy 420.375, (b) engaging in a pattern of harassment, excessive force, and maliciously fabricated conduct reports and disciplinary proceedings in retaliation against the exercise of his lawful rights;  and (c) jeopardizing his life and well-being by using prison disciplinary proceedings in a manner that forces or coerces him into "snitching" on other prisoners.

CIVIL RIGHTS COMPLAINT -1-
   (42 U.S.C. §1983)

## II.   JURISDICTION AND VENUE

2.   Jurisdiction.  Plaintiff requests compensatory damages, punitive damages, declaratory judgment, injunctive relief, and other relief and damages available under state law.  This court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question), §1343(a)(3 & 4)(deprivation of civil rights), §2201 (declaratory judgment), §2202 (injunctive relief), and §1367(a)(supplemental state law claims).

3.   Venue.  Defendants Miller-Stout, Key, Deunich, Westfall, Byrones, Jacobson, Shodahl, Cluever, Reeves, Ramsey, and Martin reside in this judicial district.

## III.   BACKGROUND

4.   Plaintiff filed civil rights complaint, Brown v. Kautzky, in the U.S. District Court for the Eastern District of Washington under cause no. CV-89-048-FVS, challenging DOC Policy 450.100's ban on "outdated magazines."  The district court initially granted summary judgment to the defendants.  Following Plaintiff's successful appeal under Ninth Circuit cause no. 90-35836, those defendants agreed to rescind their offensive policy restriction.

5.   Plaintiff filed civil rights complaint, Brown v. Mason, CV-05-0571-AAM, in the U.S. District Court for the Western District of Washington, challenging DOC Policy 440.000's ban on "magazine clippings."  The district court initially granted summary judgment to the defendants.  Following Plaintiff's successful appeal under Ninth Circuit cause no. 06-35766, those defendants agreed to rescind their offensive policy restriction.

CIVIL RIGHTS COMPLAINT -2-
   (42 U.S.C. §1983)

6. Plaintiff filed civil rights complaint, <u>Brown v. Mason</u>, cause no. CV-07-1441-MAT-BAT, in the U.S. District Court for the Western District of Washington, alleging prison officials transferred him to a much worse prison in retaliation against his pursuit of lawful grievances and lawsuits against prison officials. The parties agreed to settle that lawsuit by awarding Plaintiff $6,000.00.

7. Plaintiff filed civil rights complaint, <u>Brown v. Warner</u>, in the U.S. District Court for the Western District of Washington under cause no. CV-09-1546-RSM-BAT, challenging the confiscation and destruction of his personal property pursuant to established state procedure under DOC Policy 420.375. On 3/29/12, the U.S. Magistrate Judge recommended that summary judgment be granted in Plaintiff's favor. The district court Judge on 9/14/12 granted summary judgment in Plaintiff's favor after finding that "Defendants abused their positions of authority in a manner that was wholly predictable and preventable" by "adopting a policy directive that admittedly condones the violation of WAC 137-36-040(1)."

IV.  <u>PARTIES</u>

8. Plaintiff, Gregory Tyree Brown, at all times relevant hereto, has been a prisoner of the Washington State Department of Corrections ("DOC"). From about 9/18/11 to 9/23/12, Plaintiff was housed at the "medium custody" Airway Heights Corrections Center ("AHCC"), 11919 West Sprague Avenue, P.O. Box 2049, Airway Heights, Washington, 99001. Plaintiff was transferred to the Clallam Bay Corrections Center ("CBCC") on about 9/23/12, where

he currently resides.

9.    Defendants Bernard Warner, Eldon Vail, and Harold Clarke, at all times relevant hereto, have been employed by the State of Washington, as Secretary of DOC.    In such capacity, under RCW 72.09.050, they are individually required to manage the DOC and be responsible for the administration of adult correctional programs of all state institutions used to confine Plaintiff;    under RCW 72.09.135, to adopt standards for the operation of state adult correctional facilities as necessary to meet federal and state constitutional requirements relating to health, safety, and welfare of Plaintiff, and specific state and federal statutory requirements;    under DOC Policy 801.010, to ensure that Plaintiff is treated fairly, reasonably, with respect and dignity;    under RCW 72.09.010, to ensure that Plaintiff's health and safety is not compromised, under RCW 72.09.010(5)(d), to reward Plaintiff for good behavior;    under RCW 43.17.060, to prescribe rules and regulations not inconsistent with law, for the government of the DOC, the conduct of its officers and empoyees, the disposition and performance of its business, and the custody, use, preservation of the records, papers, documents, and property pertaining thereto;    under RCW 43.01.020, to uphold the laws and Constitutions of the United States and state of Washington, and to faithfully perform their official duties;    and under RCW 43.01.125, to identify employees whose performance warrants discipline.

10.    Defendants Maggie Miller-Stout, and James Key, at all times relevant hereto, has been employed as Limited Peace

CIVIL RIGHTS COMPLAINT -4-
   (42 U.S.C. §1983)

Officers by the DOC, appointed as Superintendent and Associate Superintendent of the AHCC, respectively.    In such capacity, under RCW 72.02.045 they are jointly responsible for the training, supervision and management of the institution, the grounds and buildings, the subordinate officers and employees, and for the prisoners housed thereat;  and are required to make, amend, and repeal rules for the administration, supervision, discipline, and security of the AHCC;  has lawful custody of Plaintiff, is responsible for enforcing the rules that govern the prison, and ensuring that Plaintiff is provided a reasonably safe envirnment;  under RCW 43.01.125, required to identify employees who may have committed misconduct;  under WAC 137-28-380(3), required to provide Plaintiff a response to his appeal of major disciplinary hearing decisions within 10 days of the appeal, and to reverse disciplinary decisions that fail to satisfy applicable constitutional, statutory and common law standards.

11.    Defendant Paul Duenich, at all times relevant hereto, has been employed by the DOC as Limited Peace Officer at the Washington State Penitentiary ("WSP") and AHCC.  He held the rank of "Lieutenant" assigned to the AHCC.    In such capacity, he is required to ensure that prison employees receive adequate training and supervision in fulfilling their official duties including, but not limited to, responses to emergencies within the prison;  to investigate allegations of employee misconduct; to reject unfounded or unjustified claims of inmate misconduct; and under RCW 43.01.125, to identify prison employees whose conduct may warrant discipline.

12.   Defendant Donna Byrones, at all times relevant hereto, has been an employee of the DOC as "Major Hearings Officer" at the AHCC.  In such capacity, under Chapter 137-28 WAC, she is required to ensure Plaintiff receives a fair and impartial hearing in disciplinary charges brought against him;  to provide reasonable advance notice of  charges against him;  to ensure Plaintiff has a reasonable opportunity to present witnesses, witness statements, and other evidence for his defense;  to question the witnesses and reporting officer when such questions are submitted in writing by Plaintiff;  to fully and accurately inform Plaintiff of the contents of any video surveillance tapes viewed outside the hearing, and give Plaintiff opportunity to refute the same prior to finding him guilty;  to state on record the reasons for denying Plaintiff's request that Defendant Shodahl be a witness in his hearing;  to make true and correct findings;   and to report to Defendant Miller-Stout any discrepancies in the disciplinary process;   and under ROCW 43.01.125, to investigate Plaintiff's allegations of employee misconduct, and identify prison employees whose performance may warrant discipline.

13.   Defendant Teresa Jacobson, at all times relevant hereto, has been an employee of the DOC as Limited Peace Officer whom held the position of "Major Hearings Clerk" at the AHCC.  In such capacity, under Chapter 137-28 WAC, she is required to prepare and distribute meaningful and effective requests for witness statements to potential witnesses requested by Plaintiff in connection with disciplinary charges made against him, and to

CIVIL RIGHTS COMPLAINT -6-
 (42 U.S.C. §1983)

report to Defendant Miller-Stout any discrepancies in the witness statement process.

14. Defendant James Westfall, at all times relevant hereto, has been employed by the DOC as Limited Peace Officer at the WSP and AHCC, whom he held the rank of Sergeant at the AHCC. In such capacity, he is required to supervise and oversee Housing Unit R's hiring practices and cell assignments of prison inmates, supervise members of the prison's emergency response team and intervene whenever a prison employee uses excessive or unreasonable force against Plaintiff, and make true and accurate reports of Plaintiff's conduct.

15. Defendant Mark Shodahl, at all times relevant hereto, has been employed by the DOC as Limited Peace Officer at the WSP and AHCC. In such capacity, he is assigned to Housing Unit R, and required to monitor Plaintiff's activities, make recommendations regarding Plaintiff's requests for housing reassignments, and under RCW 72.09.650, to respond in a reasonable manner to altercations involving Plaintiff.

16. Defendant Cluever, at all times relevant hereto, has been employed by the DOC as Limited Peace Officer at the AHCC. In such capacity, he is required to respond in a reasonable manner to altercations involving Plaintiff, to intervene whenever a prison employee uses excessive or unreasonable force against Plaintiff, and to write truthful and accurate reports regarding incidents involving Plaintiff.

17. Defendants Reeves and Ramsey, at all times relevant hereto, have been employed by the DOC as Limited Peace Officers

at the AHCC, assigned to Housing Unit R.  In such capacity, under WAC 137-36-040(1)(a), they are individually required to permit Plaintiff to mail confiscated contraband out of the institution.

18.  As a condition of their state employment, Defendants, and each of them, agreed to honor the laws and constitutions of the United States and state of Washington, and to faithfully perform their duties.  Under RCW 43.17.100, Defendants, and each of them, separately undertook surety bonds in the amount of ten thousand dollars conditioned for the honesty of said Defendants in the performance of their official duties.

19.  Defendants, and each of them, are, and at all times mentioned herein, have been the agents, servants and employees of one another, and in doing the acts and omissions herein complained of, are, and have been acting within the course and scope of said agency and employment.

20.  The acts and omissions of Defendants, and each of them, herein complained of, were committed personally and through the actions of their agents and subordinates, acting pursuant to instructions from Defendants, separately, and in concert, have been done under color of regulation(s), custom(s) or usage(s) of the state of Washington and its Department of Corrections and the WSP, AHCC, and CBCC, and such has caused Plaintiff, a citizen of the United States, to be subjected to the deprivation of rights, privileges and immunities secured to him by the laws and Constitutions of the United States and the state of Washington.

## V.  FACTS

21.  As of and prior to 6/10/12, Defendants Warner, Vail,

Clarke, Miller-Stout, Duenich, Westfall, Martin, Shodahl, and Cluever each adopted, authorized, condoned, joined and implemented a policy and culture of harassment and retaliation against prisoners such as Plaintiff who file complaints against prison employees and officials.

22.   Said policy of harassment and retaliation is widespread, well-established, and deeply-rooted into the basic framwork of the DOC and its prisons, conjured by numerous employees of the WSP between the years 1984 and 1989 and continues to this day, spread and joined by word-of-mouth and allegiance amongst prison employees throughout the Washington state prison system, including, but not limited to, the WSP, AHCC, and CBCC, manifesting in falsified official reports and evidence, officially arranged and instigated physical conflict between Plaintiff and other inmates, and punishment of Plaintiff for avoiding physical conflict and for being forced into physical conflict against his will.

23.   As of and prior to 6/10/12, Defendants Clarke, Vail, Warner, Miller-Stout, and Key adopted and implemented Washington Administrative Code 137-25-030(505), (herein-after referred to as "WAC 505"), prohibiting prisoners from "fighting with any person."

24.   Defendants in ¶26 above provide no definition for the term "fighting." WAC 505 fails to provide explicit standards for those who apply them, delegates basic policy matters to prison employees for resolution on an ad hoc and subjective basis, with attendant dangers of arbitrary and discriminatory enforcement,

provides no reasonable opportunity to know what is prohibited so that Plaintiff may act accordingly, traps Plaintiff by not providing fair warning, abuts upon sensitive areas of First Amendment freedoms, and operates to inhibit the exercise of those freedoms by causing Plaintiff to steer far wider of the unlawful zone than if the boundaries of the forbidden areas of conduct were clearly marked.

25.   The dictionary definition of the term "fighting" permits prison employees to punish Plaintiff for repelling an attacker or otherwise preventing himself from being seriously harmed, for ducking or blocking an unprovoked punch, for running away from an attacker, or for standing still and allowing a violent prisoner to pummel him.

26.   By reading the text of WAC 505's prohibition against "fighting with any person," Plaintiff could not reasonably understand that he could be administratively disciplined for repelling an attacker and preventing himself from being seriously harmed, for ducking or blocking an unprovoked punch, for running away from an attacker, or for standing still and allowing himself to be pummeled.

27.   Punishing prison litigators for repelling an attacker to prevent himself from being seriously harmed, for ducking or blocking an unprovoked punch, for running away from an attacker, or for standing still and allowing himself to be pummeled produces gratuitous fear, revulsion and humiliation that serves no legitimate penological goal, or does not represent the least restrictive means for serving a legitimate penological goal, and

CIVIL RIGHTS COMPLAINT -10-
  (42 U.S.C. §1983)

thus represents calculated harassment and "exaggerated response" to prison security.

28.  Permitting prison litigators to block or duck punches and take whatever action that is necessary to prevent themselves from being seriously harmed promotes dignity and safety for one whom is being attacked, and would not impact upon the administration of the prison system, drain prison resources, nor have a ripple effect on fellow inmates or staff.

29.  As of and prior to 6/10/12, Defendants Warner, Vail, Clarke, Miller-Stout, and Key adopted and implemented DOC Policy 550.100(II)(8) which expressly prohibits prisoners from pursuing administrative grievances against prison employees in circumstances where a prison employee initiates disciplinary or administrative action against the prisoner relating to an incident described in the prisoner's administrative grievance.

30.  The manner in which Defendants Warner, Vail, Clarke, Miller-Stout, Key, Duenich, and Byrones implement DOC Policy 550.100(II)(8) amounts to a policy of "failure to investigate" employee misconduct, and "failure to identify" prison employees who may be guilty of misconduct.

31.  The "failure to investigate" and "failure to identify" policies stated in ¶30 above encourage prison employees, including Defendants Duenich, Westfall, Shodahl, Cluever, Miller-Stout, Key, and Byrones, to submit, support, authorize, and condone known false and retaliatory disciplinary reports and findings as a means of covering-up official misconduct, and punish Plaintiff for pursuing misconduct charges against prison

CIVIL RIGHTS COMPLAINT -11-
  (42 U.S.C. §1983)

employees.

32.    As of and prior to 6/10/12, Defendants Warner, Vail, Clarke, Miller-Stout, Key, and Duenich adopted a policy of "failure to properly train, supervise and discipline" prison employees in matters involving responses to prison emergencies.

33.    As of and prior to 6/10/12, Defendants Warner, Vail, Clarke, Miller-Stout, Duenich, Shodahl, Martin, Reeves, and Ramsey adopted and implemented DOC Policy 420.375 in a manner that, contrary to WAC 137-36-040(1)(a), permits individual prison employees to decide when they may confiscate and immediately destroy personal property belonging to Plaintiff, without allowing Plaintiff opportunity to mail said confiscated property out of the institution or otherwise determine the manner of its disposition.

34.    On 1/15/12, Defendants Reeves and Ramsey confiscated and destroyed 55 of Plaintiff's personal photos pursuant to DOC Policy 420.375, without Plaintiff's authorization, and without allowing Plaintiff opportunity to challenge the basis of confiscation or mail the photos out of the institution.    In response to Plaintiff's subsequent appeal to Captain Haynes on 2/12/12, Defendants Duenich and Miller-Stout on 5/17/12 created a known false report claiming Plaintiff had stated his photos were contraband, and that Plaintiff had given them permission to destroy his photos.

35.    Following the confiscation and destruction of Plaintiff's 55 photos in ¶34 above, Defendant Westfall summoned Plaintiff to his office and told Plaintiff that AHCC employees

CIVIL RIGHTS COMPLAINT -12-
   (42 U.S.C. §1983)

are permitted to immediately destroy any of Plaintiff's personal property as "nuisance contraband," that Plaintiff's lawsuit in Brown v. Warner, will not prevent them from doing so, and that Plaintiff "had just better get use to it."

36. On 2/1/12, AHCC employees confiscated a box of magazine clippings from Plaintiff's cell. After Plaintiff showed Unit R Supervisor that the court in ¶5 above ruled it unlawful to confiscate Plaintiff's magazine clippings, Defendant Westfall was directed to return the box of magazine clippings to Plaintiff, which he visibly, angrily did on 2/6/12. Defendant Westfall told Plaintiff that he is getting "sick and tired" and has "had enough" of Plaintiff's complaints.

37. Defendants Shodahl, Westfall, and Martin thereafter engaged in a pattern of harassment and retaliation against Plaintiff for his legal activities. For instance, Defendants Martin and Westfall in grievance log I.D. no. 1200893 refused to allow Plaintiff to attend his medical appointment on 12/15/11.

38. On 4/30/12, Defendants Martin and Shodahl conspired to, and did, issue a disciplinary infraction against Plaintiff for attending a medical appointment during "cell cleaning" hours, which prevented Plaintiff from cleaning his prison cell, even though moments earlier Defendant Shodahl had already assured Plaintiff that he would not receive an infraction for failing to clean his cell during his medical appointment. Unit Sergeant Smith on 5/9/12 dismissed the infraction as "stupid" and "ridiculous."

39. By their actions and omissions described in ¶¶34 thru

38 above, Defendants Reeves, Ramsey, Martin, Shodahl, and Westfall collectively inform Plaintiff they will continue to confiscate and immediately destroy Plaintiff's personal property and then lie about it, and to further harass and punish Plaintiff for complaining about it.

40.  Between 8/25/11 and 6/10/12, for the purpose of forcing Plaintiff to work more than 8 hours per day as punishment for his legal activities, Defdendant Westfall refused to allow Plaintiff to be hired to a "light duty" 2-hour Unit Porter job within the housing Unit, while giving the light duty Porter Jobs to inmates who do not file grievances or lawsuits, such as Inmate Dulo, whom arrived at AHCC long after Plaintiff had applied for the )Unit Porter job.

41.  On or before 6/10/12, Defendants Miller-Stout, Key, Duenich, Westfall, Byrones, and Martin had knowledge that Plaintiff submitted numerous grievances and complaints against AHCC employees, some of which directly impacted and implicated said Defendants, including, but not limited to, grievance log I.D. numbers 1117083, 1125326, 1125328, 1200893, 1202966, 1204334, and 1211527, and letter to Captain Haynes dated 2/12/12.

42.  Between 4/10/12 and 6/10/12, Plaintiff repeatedly requested Defendant Shodahl to assign him to another cell within the housing Unit.  In response, Defendant Shodahl informed Plaintiff that Defendant Westfall denied Plaintiff's requests because of Plaintiff's complaints against prison officials.

43.  On 6/10/12, while Plaintiff and numerous other inmates

CIVIL RIGHTS COMPLAINT -14-
   (42 U.S.C. §1983)

were walking to the prison's dining room for lunch, inmate Charles Jones sneaked up behind Plaintiff and struck Plaintiff's right eye, thereby crushing Plaintiff's right eye socket and all bones therein. Plaintiff had done nothing to provoke the attack.

44. For several moments Plaintiff's leg felt rubbery and he did not know where he was. Plaintiff turned to find inmate Jones standing in front of him with fists balled, a menacing look on his face.

45. Inmate Jones attempted to assault Plaintiff three more times; however, Plaintiff evaded each punch and knocked Jones backward. Plaintiff then evaded a fourth punch, grabbed Jones and slammed him to the ground, holding him there for a prison employee to come take him away. However, no one came to take him away.

46. In an attempt to follow the rules of the prison, Plaintiff consciously chose not to hurt Jones. After holding Jones down on an unlevel section of ground for approximately three minutes, Jones flipped Plaintiff over to the bottom. Plaintiff then held Jones in a "headlock" in order to restrain Jones and avoid having to injure and disable him.

47. After approximately four minutes of holding Jones in a head lock, a prison's emergency response team consisting of Defendants Westfall, Shodahl, and Cluever, Sgt. Himlie, and several other Limited Peace Officers began to arrive, yelling "break it up!" from a distance. In order to comply with the orders of prison staff, Plaintiff released Jones from the head lock.

CIVIL RIGHTS COMPLAINT -15-
(42 U.S.C. §1983)

48.    Jones then again started trying to punch Plaintiff; however, Plaintiff again blocked and misrouted all of inmate Jones' amazingly slow punches.

49.    Sergeant Himlie and Defendants Shodahl, Westfall and Cluever were first to arrive at the scene of the assault. Defendant Shodahl and Sergeant Himlie pried inmate Jones off the top of Plaintiff as Jones continued to punch down at Plaintiff.

50.    Plaintiff fully cooperated with the emergency response team by laying face down on the ground and positioning his hands behind his back.

51.    While having knowledge of Plaintiff's court action in Brown v. Warner in ¶7 above, and of Plaintiff's exhausted administrative remedies regarding his 55 confiscated photos in ¶¶34 and 35 above, Defendants Cluever and Shodahl pounced on top of Plaintiff and positioned their full body weight squarely on top of the center of Plaintiff's back, causing Plaintiff to experience compression asphyxia that created actual, imminent danger to Plaintiff's life and well-being.

52.    Plaintiff was out of breath and in need of oxygen, but was unable to breathe with Defendant Cluever's and Shodahl's body weight on top of his back.  Plaintiff gasped the words, "I can't breathe."   However, Defendant Shodahl and Cluever refused to stop, but instead continued sitting their full body weight on the center of Plaintiff's back, thereby preventing Plaintiff from breathing, and in so doing, they caused Plaintiff to experience terror of instant and unexpected death.

53. After several moments had passed, Plaintiff felt his right hand being cuffed. Believing (or desperately hoping) that both of his hands had been cuffed, Plaintiff then tried to put his right hand underneath his stomach, to create space between his stomach and the ground so that he might steal a sip of air. Defendant Shodahl, however, grabbed Plaintiff's right hand and thwarted Plaintiff's attempts to breathe.

54. After finally cuffing both of Plaintiff's hands, Defendants Shodahl and Cluever kept their full body weight squarely on top of the center of Plaintiff's back for approximately 90 more seconds for the sole purpose of preventing Plaintiff from breathing.

55. As Plaintiff thought he was losing consciousness, one of the other prison employees said "okay," signaling they had finally managed to subdue inmate Jones. Corrections Officer Lundgren then made Defendant Shodahl get off the top of Plaintiff, and helped Plaintiff off the ground.

56. Defendants Warner, Vail, Clarke, Miller-Stout, Key, and Duenich fail to adequately train and supervise Defendants Westfall, Shodahl, and Cluever in proper restraint and potential for causing compression asphyxia when responding to an altercation between prisoners.

57. Defendants Warner, Vail, Clarke, Miller-Stout, Key, and Duenich fail to inform prisoners, including Plaintiff, regarding how he is expected to respond to a violent assault made against them.

58. Defendants Shodahl and Cluever in ¶¶51 thru 55 above

acted maliciously, sadistically, and unreasonably when he initially sat on top of Plaintiff and then refused to adjust himself after Plaintiff said he could not breathe.

59.   While having knowledge of Plaintiff's court action in ¶7 above, and knowledge of Plaintiff's exhausted administrative remedies regarding confiscation and destruction of his 55 photos in ¶¶37 and 38 above, Defendant Westfall willfully failed to restrain or correct Defendant Shodahl's and Cluever's methods used during the emergency response stated in ¶¶51 thru 58 above.

60.   Defendants Shodahl, Westfall and Cluever in ¶¶51 thru 55, and 59 above are deliberately indifferent to Plaintiff's right to be free of excessive and unreasonable force.

61.   Plaintiff submitted grievance log I.D. no. 12513585 regarding the unnecessary and unreasonable force used upon him; however, said grievance was rejected by the prison's Grievance Coordinator as "nongrievable" pursuant to DOC Policy 550.100(II)(8) in ¶¶29 thru 31 above.   Plaintiff's subsequent appeal to the Grievance Program Manager was denied 8/10/12.

62.   Plaintiff was immediately taken from the area of altercation to the prison's clinic and examined by medical staff.

63.   A few minutes after arriving at the prison clinic, Defendant Duenich met and spoke with Plaintiff.   At that time, Plaintiff informed Defendant Duenich that he did nothing wrong, and that a member of the emergency response team had tried to smother him to death and should be disciplined.   Defendant Duenich then said he would "look into it."

64.   Plaintiff was then rushed to the Deaconess Medical

CIVIL RIGHTS COMPLAINT -18-
  (42 U.S.C. §1983)

Center in Spokane, Washington, where plastic surgeon, Dr. Kevin Michels recommended surgery and follow-up care with possible additional surgery. Just a few days later Plaintiff underwent extensive surgery to repair his eye socket, and was returned to the prison clinic several hours after surgery.

65.   Thereafter, Plaintiff was returned to Dr. Kevin Michels' office on several occasions for follow-up care, at which time Dr. Michels again stated Plaintiff might require additional surgery, to be determined during a follow-up appointment scheduled 8/24/12.

66.   As of 6/10/12, Defendants Miller-Stout, Key, Duenich, Westfall, Shodahl, and Cluever shared a "meeting of minds" to knowingly manufacture misconduct cover-up findings and reports against Plaintiff in retaliation against Plaintiff's exercise of his rights to (a) complain of Defendant Shodahl's excessive and unreasonable force, and (b) present a defense to the WAC 505 and 777 disciplinary charges.

67.   While having knowledge of Plaintiff's court action in Brown v. Warner in ¶7 above, and knowledge of Plaintiff's exhausted administrative remedies regarding the confiscation and destruction of his 55 photos in ¶¶34 and 35 above, Defendant Westfall, in furtherance of the agreement stated in ¶21, 22 and 66 above, issued a known false and malicious report claiming he saw Plaintiff and inmate Jones holding onto each other with one hand and punching each other with the other hand.

68.   On or about 6/11/12, Defendant Duenich again visited Plaintiff in the prison's clinic. Defendant Duenich then

informed Plaintiff that inmate Jones admitted to assaulting him, and that Plaintiff had clearly done nothing wrong.

69.    Plaintiff then asked what was being done to the prison employee whom nearly smothered him to death?    In response, Defendant Duenich informed Plaintiff that, because of his complaint against the prison employee, Defendant Deunich would authorize and support the issuance of a disciplinary infraction against Plaintiff for fighting and resisting staff orders, and that Plaintiff could "take it up with the hearings officer."

70.    On 6/13/12, Plaintiff received:    (a) notice of disciplinary hearing, and (b) major disciplinary infraction charging him with "fighting with any person" and "resisting staff orders" when he moved his hand as described in ¶53 above.    These allegations against Plaintiff were written by Defendant Shodahl, and made no mention of Defendant Shodahl or Defendant Cluever putting their full body weight on top of Plaintiff in any way.

71.    In preparation for his defense against the disciplinary charges, Plaintiff requested any existing video surveillance taped recordings of the incident be brought to the hearing.

72.    Plaintiff further requested that all officers present at the scene of the altercation be (a) brought to the hearing, and (b) provide a written witness statement.

73.    In lieu of his request for a witness statement, Plaintiff asked that Defendant Shodahl answer the folowing questions:

(a) As I was laying face down with my hands behind my

CIVIL RIGHTS COMPLAINT -20-
  (42 U.S.C. §1983)

back, did you put your body weight on top of me?

    (b) Did I tell you I could not breathe?

    (c) Did you continue to leave your body weight on top of me until the other C/O had finished with the other inmate?,

    (d) Does restraining an inmate require the inmate be prevented from breathing?,

    (e) Who does an inmate trying to breathe amount to resisting restraint?,

    (f) Why would you want to punish an inmate for trying to breathe?, and

    (g) Did you attempt to kill me or want me to stop breathing?

74.   In lieu of Plaintiff's request for witness statements stated in ¶72 above, Defendants Jacobson and Byrones sent requests for witness statements to Defendants Duenich, Westfall, Flack, Cluever, Lundgren, Lutton, and Sergeant Himlie.

75.   The requests for witness statements in ¶74 above recited "word for word" the allegations Defendant Shodahl made against Plaintiff, and provided no clue as to Plaintiff's need of them to testify about Defendants Shodahl and Cluever putting their full body weight on top of Plaintiff and nearly smothering Plaintiff to death.

76.   The witness statement procedure stated in ¶75 above unfairly permits and invites potential witnesses to effortlessly concur with whatever that is written by Defendant Shodahl, not requiring them to describe what happened in their own words.

77.   As result of the process for obtaining witness

CIVIL RIGHTS COMPLAINT -21-
  (42 U.S.C. §1983)

statements in ¶¶75 and 76 above, said potential witnesses were never informed that Plaintiff needed them to witness that Defendants Shodahl and Cluever had put their full body weight on top of him and nearly smothered him to death.

78.   In furtherance of the "meeting of minds" reached amongst Defendants in ¶66 above, Defendants Jacobson and Byrones refused to obtain a witness statement from Defendant Shodahl.

79.   Because of Defendants' actions and omissions in ¶¶75 tnru 78 above, Plaintiff was unable to obtain evidence to support his claim that Defendants Shodahl and Cluever had caused Plaintiff to move his hand, as stated in ¶¶53 and 70 above.

80.   On 6/14/12, Plaintiff did not know the identity of the prison employee whom had nearly smothered him to death. Plaintiff therefore wrote a letter to Defendant Miller-Stout reporting the unknown prison employee for nearly smothering him to death.

81.   In response to Plaintiff's letter in ¶80 above, on 7/2/12 Defendants Miller-Stout, and Cluever, for the purpose of maliciously hurting Plaintiff and covering-up official misconduct, created a known false statement (a) asserting that Defendant Cluever did not place his body weight on top of Plaintiff's back, and (b) creating the false appearance that (i) Defendant Shodahl was not a member of the emergency response team at all, and (ii) Plaintiff was not bothered at all by any of the force used against him.

82.   On or about 7/25/12, Plaintiff appeared before Defendant Byrones for the disciplinary hearing. At that time,

CIVIL RIGHTS COMPLAINT -22-
   (42 U.S.C. §1983)

Defendant Byrones read the infraction report to Plaintiff, and asked Plaintiff if he understood the charges.

83.    Plaintiff said he does not understand what is meant by the term "fighting."   Defendant Byrones therefore postponed the hearing until Plaintiff could confer with a "staff advisor" to explain the term "fighting" to Plaintiff.

84.    A couple of hours later, Plaintiff was visited by Counselor Fox.   At that time, Plaintiff asked Counselor Fox if there is a written policy or memorandum publishing an officially-adopted definition for the term "fighting" as used in WAC 505.

85.    In response to Plaintiff's question in ¶84 above, Counselor Fox stated the only available definition for the term "fighting" is provided by Webster's Dictionary, which, by definition, permits prison officials to punish Plaintiff for ducking or blocking a punch, for standing still and allowing himself to be pummeled, or for running away from an attacker.

86.    Also during the consultation period in ¶¶84 and 85 above, Counselor Fox admitted to Plaintiff that prison policy, practice and procedure gives prison employees and officials total discretion in charging, interpreting and finding Plaintiff guilty of fighting in violation of WAC 505.   Counselor Fox further said AHCC officials normally will not impose a harsh punishment if the inmate being assaulted immediately runs away and finds a prison employee and reports that he is being attacked.

87.    On or about 7/30/12, Plaintiff filed grievance log I.D. no. 12516492 regarding the lack of a written administrative definition for the term "fighting."   However, the prison's

CIVIL RIGHTS COMPLAINT -23-
   (42 U.S.C. §1983)

Grievance Coordinator rejected this grievance as "non grievable" pursuant to DOC Policy 550.100(II)(8) stated in ¶¶29 thru 31 above. The decision on non-grievability was later upheld by the Grievance Program Manager on 8/28/12.

88. On or about 7/26/12, Plaintiff was summoned to reappear at his disciplinary hearing, where Plaintiff again requested that Defendant Shodahl be present and/or submit a written statement answering his written questions stated in ¶73 above. Defendant Byrones, however, then said she would not investigate or require Defendant Shodahl to provide evidence in Plaintiff's disciplinary hearing.

89. Defendant Byrones failed to record her reason for refusing to make Defendant Shodahl appear, give testimony, or submit a written statement answering Plaintiff's questions for the disciplinary hearing.

90. By refusing to investigate or compel Defendant Shodahl's physical presence or obtain the written statement answering Plaintiff's questions, Defendant Byrones denied Plaintiff all opportunity to obtain evidence that Defendants Shodahl and Cluever nearly smothered him to death, and present this circumstance as a defense to the WAC 777 charge.

91. During the hearing stated in ¶88 above, Plaintiff testified to the facts stated in ¶¶43 thru 60, 63, 68 and 69 above.

92. Defendant Byrones examined evidence that had been gathered for the hearing, which consisted of (a) photo of Jones' injured hand, (b) photo of Jones' unmarked face, (c) photo of

Plaintiff's injured right eye, (d) photo of Plaintiff's bloodied coat, (e) photo of Plaintiff's blood on Jones' clothing, (f) photo of Plaintiff's blood on Plaintiff's face and hair.

93.  All prison employees present at the scene of the assault, including Sergeant Himlie, officers Flack, Aaron, Lundgren, Lutton, and Defendants Shodahl and Cluever, submitted incident reports describing that inmate Jones had to be pried off the top of Plaintiff, while inmate Jones punched down at Plaintiff.  All physical evidence presented at the hearing demonstrated that inmate Jones did not have a single scratch on him, and that Plaintiff had done nothing wrong.

94.  Following Plaintiff's testimony, Defendant Byrones said she must postpone the hearing so that she could review, outside Plaintiff's presence, two available video surveillance tapes of the assault upon Plaintiff.

95.  On 7/27/12, Defendant Byrones again summoned Plaintiff to the hearings office.  At that time, Defendant Byrones immediately stated she had reviewed the video surveillance tape of the altercation, and that Plaintiff is guilty of fighting and "resisting" because prison staff had to pry Plaintiff off the top of inmate Jones while Plaintiff punched down on inmate Jones.

96.  Defendant Byrones in ¶95 above knowingly falsified the claim that Plaintiff was pried off the top of inmate Jones, and that Plaintiff had punched down on inmate Jones.  Said falsification was done by Defendant Byrones in order to, and did, suppress that Defendants Shodahl and Cluever had used excessive and unreasonable force upon Plaintiff, and to, and did, punish

Plaintiff for attempting to prove that Defendant Shodahl's and Defendant Cluever's use of excessive and unreasonable force provided a defense to the WAC 777 charge of resisting staff orders.

97. The falsified claim that Plaintiff had to be pried off the top of inmate Jones and that Plaintiff had punched down on inmate Jones served no penological goal and was done with malice and deliberate indifference to the rights of Plaintiff.

98. As of and prior to 7/27/12, (a) the DOC, AHCC, WSP and CBCC adopted and implemented policy authorizing the use of lethal force against any prisoner who punches down on another prisoner and refuses staff orders to stop, and (b) there were no reports in Plaintiff's prison record that could authorize the use of lethal force against Plaintiff.

99. The Department of Corrections, its prisons, each of the Defendants herein, their agents, employees and successors in interests routinely use reports and findings of inmate conduct to assess the future risk level of said inmates including, but not limited to, responses to prison emergencies. Defendant Byrones' known false accusation that Plaintiff had to be pried off the top of inmate Jones and that Plaintiff had punched down on inmate Jones arbitrarily, maliciously, sadistically, and dramatically increases the chances that lethal force will be used against Plaintiff in the future.

100. Plaintiff attempted to tell Defendant Byrones that he was not pried off the top of inmate Jones and did not punch down on inmate Jones, but Defendant Byrones waved her hand signalling

for Plaintiff not to talk.

101.   Defendant Byrones sentenced Plaintiff to serve 15 days in segregation, 30 days confinement to quarters, 20 days loss of recreation, and further referred Plaintiff to the prison's classification team for demotion from medium custody to close custody for having to be pried off inmate Jones while punching down on inmate Jones.

102.   On or about 7/27/12, Plaintiff mailed a letter to Defendant Byrones asking her to reconsider her finding of guilty in Plaintiff's above disciplinary hearing;  however, Defendant Byrones never responded to Plaintiff's letter.

103.   As Major Disciplinary Hearings Officer charged with providing Plaintiff a full and fair hearing for determining his guilt or innocence, Defendant Byrones' actions in suppressing exculpatory evidence, distorting and misrepresenting evidence, denying Plaintiff's right to present evidence and right to present a defense, denying Plaintiff's right to advance notice of charge and right to refute evidence, failing to consider the substance of Plaintiff's defense, and creating known false appearance that Plaintiff committed acts that warrant the use of lethal force upon him, is clearly arbitrary and capricious, having no substantial relation to the public health, safety, morals, or general welfare;  constitutionally oppressive, shocking to the conscience, affronting the concept of ordered liberty, and offends judicial notions of fairness and human dignity.

104.   Plaintiff on 9/14/12 appealed Defendant Byrones'

finding of guilty to Defendant Miller-Stout; however, Defendant James Key, acting on behalf of Defendant Miller-Stout, contrary to the evidence presented at the disciplinary hearing in ¶93 above, completely ignored Plaintiff's assertion that Defendant Byrones had falsified the claims that he was pried off the top of, and punched down at, inmate Jones, and denied the appeal on 9/13/12. As justification, Defendant Key falsely, maliciously and recklessly claimed "the DVD of the incident were examined by the hearings Officer and that these supported the officer's written reports and observations," and that the evidence "showed that [Plaintiff] had injuries consistent with being involved in a fight." Defendant Key then refused to provide Plaintiff a copy of the denial, which forced Plaintiff to purchase a copy through the public disclosure process.

105.    Plaintiff on 12/06/12 filed grievance log I.D. no. 12525742 regarding Defendant Stout-Miller's refusal to provide a response to his appeal; however, the prison's Grievance Coordinator on 12/10/12 rejected this grievance pursuant to DOC Policy 550.100(II)(8) in ¶¶29 thru 31 above. The rejection was upheld by the Grievance Program Manager on 1/2/13.

106.    While Plaintiff, due to the above actions of Defendants, continues to suffer apprehension and fear of lethal force being used against him if he continues to pursue his court litigation stated in ¶¶4 thru 7 above, Defendant Warner on 8/30/12 reinstated the ban on "magazine clippings," with total disregard for the previous Court's finding in ¶4 above, that the ban on magazine clippings is unconstitutional.

107.   Defendants in ¶¶9 thru 20 above entered into a lawful contract with the state of Washington and the DOC to treat Plaintiff fairly, reasonably, with dignity and respect, to provide a reasonably safe environment, to reward Plaintiff for good behavior, and to honor his rights provided by the laws and Constitutions of the state of Washington and the United States.

108.   Plaintiff fulfilled his considerations under lawful contract stated in ¶¶9 thru 20, and 107 above when he:  (a) did not injure inmate Jones, and resisted the assault only to the extent necessary to prevent further serious physical harm to his person,  (b) unknowingly resisted Defendant Shodahl's and Defendant Cluever's use of excessive and unreasonable force only to the extent necessary to prevent further serious physical harm to his person, (c) appeared at his disciplinary hearing, pled not guilty, and testified that he merely defended himself from the assault and attempted to breathe despite Defendant Shodahl's and Defendant Cluever's use of excessive, unreasonable, smothering use of force, (d) requested the appearance of witnesses at his disciplinary hearing, (e) requested a witness statement from Defendant Shodahl with submitted questions, and that Defendant Shodahl provide evidence at his discplinary hearing, (f) requested that Defendant Byrones reconsider her finding of guilty, and (g) appealed the finding of guilty to Defendant Miller-Stout.

109.   In committing the acts and omissions stated in ¶¶66, 75 thru 79, 81, 88, 89, 90, 95 thru 97, and 99 thru 104 above, and denying Plaintiff's appeals, Defendants Miller-Stout, Key and

Byrones abdicate each of their contractual obligations owed to Plaintiff as stated in ¶107 above.

110.   Defendants Warner, Miller-Stout, Key, and Byrones used the WAC 505 and 777 charges to have Plaintiff demoted to close custody and transferred to the close custody CBCC on 8/23/12.

111.   The finding of guilty, demotion in custody, and subsequent transfer to CBCC served no legitimate penological goal, was not narrowly tailored to serve a legitimate penological objective, and was committed because of, and would not have occurred, absent, the exercise of Plaintiff's constitutional, statutory and common law rights.

112.   As result of the transfer stated in ¶110 and 111 above, Plaintiff's medical treatment by Dr. Kevin Michels stated in ¶65 above was revoked on 8/24/12. Consequently, Plaintiff is denied his prescheduled follow-up medical care.

113.   DOC Policy 550.100(II)(8) described in ¶¶29 thru 31 above was a moving force behind the Defendants' use of excessive and unreasonable force and retaliatory actions stated in ¶¶50 thru 106, and 109 thru 112 above.

114.   Defendants Byrones, Miller-Stout, Key, and Jacobson are aware of Plaintiff's right to defend himself, right to not snitch on other inmates, right not to be retaliated against, right to reasonable advance notice of charges and prohibited conduct;  right to refute charges and evidence, right to obtain meaningful witness statements and present a defense, right to a fair and impartial tribunal;  right to be free of falsified conduct reports, disciplinary findings, distorted and

misrepresented evidence, and suppression of exculpatory evidence; right to receive a response to his disciplinary appeal, right to be rewarded for good conduct, and right to be treated with respect and dignity. Yet these Defendants have refused to honor, and are deliberately indifferent to, said rights and immunities of Plaintiff's.

115.    Defendants Byrones, Miller-Stout, Key, Duenich, Westfall, Shodahl, and Cluever are aware of Plaintiff's right to be free of excessive force and right to reasonably resist excessive force. Yet these Defendants refuse to honor, and are deliberately indifferent to, said rights and immunities of Plaintiff's.

116.    The use of excessive and unreasonable force and subsequent false and malicious retaliatory reports and disciplinary action taken against Plaintiff by Defendants in ¶¶50 thru 106, and 109 thru 115 above were done for the purpose of penalizing and retaliating against Plaintiff for exercising his constitutional, statutory, and common law rights.

117.    But for the exercise of Plaintiff's constitutional, statutory and common law rights, the retaliatory actions by Defendants in ¶¶50 thru 116 above would not have occurred.

118.    As result of the transfer to the CBCC, Plaintiff was required to pay approximately four hundred dollars to transport his personal property from the AHCC to the CBCC.

119.    Conditions at the CBCC are more onerous than conditions at the AHCC and other medium custody facilities.

120.    Plaintiff has been permanently deprived access to 20

of his personal cassette tapes solely because of the transfer. Said cassette tapes contain irreplaceable music and other invaluable material that cannot be replaced.

121.    On or about 10/11/12, Plaintiff appealed the restriction upon his cassette tapes in ¶120 above; however, the appeal was denied by the CBCC Superintendent on 10/28/12.

122.    At the AHCC, Plaintiff was provided access to a telephone approximately 15½ hours per day. At the CBCC, however, Plaintiff receives no more than 3 hours per day access to telephones.

123.    At the AHCC, Plaintiff was allowed out of his prison cell approximately 15 hours per day; whereas at the CBCC he is only allowed out of his prison cell no more than 2-6 hours per day, depending upon whether dayroom access periods conflict with yard or gym access periods.

124.    At the medium custody AHCC facility, Plaintiff received approximately four hours per day (five days per week) access to the prison's law library. At the close custody CBCC, however, Plaintiff receives an average of approximately 5 hours per week access to the prison's law library.

125.    Plaintiff at the AHCC was allowed to bring carbon paper, writing paper, and typing paper free of charge back from the law library to his prison cell. With carbon paper, Plaintiff could continue working on his legal papers practically 24 hours per day, or 168 hours per week. At the CBCC, however, Plaintiff is not allowed to bring carbon paper, writing paper, nor typing paper back to his prison cell, and therefore only permitted to

CIVIL RIGHTS COMPLAINT -32-
  (42 U.S.C. §1983)

work on his court litigation 5 hours per week, which must be done while inside the prison's law library.  Even under these onerous conditions, Plaintiff is unable to work on his legal papers for these 5 hours per week because much of his law library access time must be spent in conducting legal research.

126.  The retaliatory actions of Defendants stated above serve no legitimate penological goal, or were not narrowly tailored to serve a legitimate penological goal.

127.  Due to the retaliatory actions and omissions taken by Defendants in ¶¶50 thru 126 above, Plaintiff's exercise of his constitutional, statutory and common law rights have been effectively chilled.

## V.   CAUSES OF ACTION

A.  FIRST CLAIM FOR RELIEF:
    UNLAWFUL   RETALIATION

128.  Plaintiff incorporates by reference the allegations contained in ¶¶1 thru 127, inclusive.

129.  In order to punish Plaintiff for exercising his constitutional, statutory and common law rights, Defendants conspire to, and did, deny Plaintiff's right to defend himself against unprovoked assault, subjected Plaintiff to excessive and unreasonable force, denied his right to reasonably resist excessive force, falsify conduct reports, initiate arbitrary and capricious disciplinary action against Plaintiff, suppress exculpatory evidence, distort and misrepresent evidence, deny Plaintiff's right to refute and present evidence and to present a defense, deny his right to advance notice of charge, refuse to reward him for good behavior, find him guilty and sentence him to

CIVIL RIGHTS COMPLAINT -33-
  (42 U.S.C. §1983)

punishment, refuse to provide a response to his appeal, and transfer him to a more restrictive facility, and cause future danger to Plaintiff's life and well being by creating the false appearance that Plaintiff willfully and recklessly committed conduct that warrants the use of lethal force against him, contrary to the First Amendment to the United States Constitution.

B.    SECOND CLAIM FOR RELIEF:
      DENIAL OF SELF DEFENSE

130.    Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

131.    In punishing Plaintiff for fighting, Defendants Warner, Vail, Clarke, Miller-Stout, Key, Byrones, Duenich, and Shodahl conspired to, and did, infringe upon Plaintiff's substantive right to defend himself, contrary to the Second and Fourteenth Amendments to the United States Constitution, Washington Constitution Article 1, Section 3, and the common law.

C.    THIRD CLAIM FOR RELIEF:
      DENIAL OF DUE PROCESS

132.    Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

133.    Defendants require Plaintiff to run to a prison employee and report that inmate Jones assaulted him, and they punish Plaintiff for failing to do so, contrary to substantive due process under the Fourteenth Amendment to the U.S. Constitution, Washington Constitution Article 1, Section 3, and the common law.

D.   FOURTH CLAIM FOR RELIEF:
     <u>DENIAL OF RIGHT TO PRESENT A DEFENSE</u>

134.   Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

135.   In suppressing exculpatory evidence, distorting and misrepresenting evidence, denying advance notice of charges and advance notice of prohibited conduct, using a totally ineffective procedure for obtaining witness statements, failing to investigate Plaintiff's claims against of excessive and unreasonable force, failing to require Defendant Shodahl to answer Plaintiff's questions, and denying Plaintiff's the opportunity to refute the claim that Plaintiff was pried off the top of inmate Jones and was punching down at inmate Jones, Defendants Miller-Stout, Key, Byrones and Jacobson deny Plaintiff's right to present a defense, contrary to the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, Washington Constitution Article 1, Section 3, WAC 137-28-300(4)-(5)-(6), and the common law.

E.   FIFTH CLAIM FOR RELIEF:
     <u>DENIAL OF ADVANCE NOTICE</u>
     <u>OF PROHIBITED CONDUCT</u>

136.   Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

137.   Defendants Warner, Vail, Clarke, Miller-Stout, Key, Byrones, and Shodahl punish Plaintiff for "fighting with any person" without providing Plaintiff reasonable advance notice of what constitutes "fighting," contrary to the Due Process Clause

of the Fourteenth Amendment to the United States Constitution, Washington Constitution Article 1, Section 3, WAC 137-28-180(1), and the common law.

F.   SIXTH CLAIM FOR RELIEF:
DENIAL OF ADEQUATE NOTICE OF CHARGES

138.   Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

139.   Defendants Miller-Stout Key, and Byrones punish Plaintiff without permitting him the opportunity to refute misrepresentation that he was pried off the top of inmate Jones and was punching down at inmate Jones, contrary to the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, Washington Constitution Article 1, Section 3, WAC 137-28-270(1)(a), and the common law.

G.   SEVENTH FOR RELIEF:
DENIAL OF IMPARTIAL TRIBUNAL

140.   Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

141.   Defendant Byrones denied Plaintiff's substantive due process right to an impartial tribunal when she suppressed exculpatory evidence, distorted and misrepresented physical and video evidence, denied Plaintiff's right to present evidence and present a defense, denied Plaintiff's right to advance notice of charge that he was pried off the top of Jones while punching down on Jones, and denied Plaintiff's right to refute that he was pried off the top of Jones or that he punched down on Jones, contrary to the Fourteenth Amendment to the United States Constitution, Washington Constitution Article 1, Section 3, and

the common law.

H.  EIGHTH CLAIM FOR RELIEF:
    CRUEL AND UNUSUAL PUNISHMENT

142.   Plaintiff incorporates herein the allegations contained in ¶¶1 thu 127, inclusive.

143.   Defendants Shodahl and Cluever used excessive and unreasonable force that caused Plaintiff to experience prolonged compression asphyxia that created gratuitous fear of immediate and unexpected death, contrary to the Eighth Amendment of the United States Constitution, Washington Constitution Article 1, Section 14, RCW 72.09.650, and the common law.

I.  NINETH CLAIM FOR RELIEF:
    PROCEDURAL DUE PROCESS

144.   Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

145.   Defendants deny Plaintiff procedural due process when they confiscated and destroyed his 55 personal photos, contrary to the Fourteenth Amendment to the United States Constitution, Washington Constitution Article 1, Section 3, WAC 137-36-040(1)(a), and the common law.

J.  TENTH CLAIM OF RELIEF:
    BREACH OF CONTRACT

146.   Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

147.   Defendants Byrones, Miller-Stout, and Key willfully fail to fulfill their contractual obligations owed to Plaintiff under WAC 137-28-300 when they (a) fail to provide reasonable notice of prohibited conduct, (b) fail to provide sufficient notice of charge that he punched down at inmate Jones and was

pried off the top of inmate Jones, (c) fail to produce witnesses at his disciplinary hearing, (d) fail to obtain a witness or obtain answers to the 7 questions posed by Plaintiff, (e) fail to permit Plaintiff to refute misrepresentation of contents of the video taped recording prior to finding him guilty, (f) misrepresent the contents of the video surveillance taped recording, (g) fail to investigate or acknowledge that Defendants Shodahl and Cluever had nearly smothered Plaintiff to death, and (h) fail to reward Plaintiff for not injuring inmate Jones.

K.  ELEVENTH CLAIM FOR RELIEF:
    FORFEITURE OF SURETY BOND

148.   Plaintiff incorporates herein the allegations contained in ¶¶1 thru 127, inclusive.

149.   By submitting, adopting, and upholding known false and malicious reports claiming Plaintiff was pried off the top of inmate Jones and punched down at inmate Jones, and that Plaintiff was not bothered by the use of force against him, Defendants Miller-Stout, Key, Byrones, and Cluever, contrary to RCW 43.08.070, breached conditions made obligatory upon them by law, contrary to RCW 43.08.070, and such has disentitled them to their surety bonds stated in ¶18 above.

VI.   PRAYER FOR RELIEF

150.   Plaintiff requests this Court grant him relief as follows:

(a)   Declaratory judgment that Defendants, and each of them, through their individual and collective acts, practices and omissions herein complained of, have subjected Plaintiff to:

CIVIL RIGHTS COMPLAINT -38-
   (42 U.S.C. §1983)

(a) actual punishment, and unconstitutional, unreasonable, unlawful apprehension and fear of punishment, for the exercise of his basic freedoms and liberties; (b) excessive and unreasonable force; (c) unlawful and unconstitutional destructions of personal property; and (d) known false, retaliatory reports and disciplinary findings and proceedings;

(b) <u>Preliminary and permanent injunctions</u> against Defendants, and each of them, their agents, employees, successors in interests, and all others in active concert and participation with them: (i) <u>enjoining</u> the implementation of WAC 137-25-030(505) and similar regulations that provide for the punishment of prisoners for fighting in self defense; (ii) <u>enjoining</u> the use of excessive and unreasonable force against Plaintiff; (iii) <u>enjoining</u> the retaliatory use of false reports and falsified disciplinary findings and decisions against Plaintiff; (iv) <u>enjoining</u> further harassment and retaliation against Plaintiff; <u>enjoining</u> punishment of Plaintiff without adequate advance notice of charges and notice of prohibited conduct; <u>enjoining</u> punishment of Plaintiff without adequate opportunity to refute charges or present a defense; <u>enjoining</u> DOC Policy 550.100(II)(8) and similar regulations, policies, practices and procedures that prevent or delay investigation into allegations of employee misconduct; <u>enjoining</u> the use of DOC Policy 420.375 to confiscate and destroy Plaintiff's personal property; <u>enjoining</u> the use of prison disciplinary proceedings or any other administrative mechanism or procedure that tends to force or coerce Plaintiff to snitch on other inmates; <u>ordering</u> that the

CIVIL RIGHTS COMPLAINT -39-
  (42 U.S.C. §1983)

surety bonds of each of the Defendants be awarded to Plaintiff; ordering expungement of the disciplinary action taken against Plaintiff, along with all related reports, findings and decisions;   ordering the development and implementation of adequate training standards and procedures regarding the use of force against prisoners;   and ordering the provision of timely responses to administrative appeals.

(c)   Compensatory damages in the amount of $75,000.00 from Defendants, with ten percent interest until such award is paid in full;

(d)   Punitive damages in the amount of $75,000.00 from Defendants, and each of them, separately, with ten percent interest until such award is paid in full;

(e)   Plaintiff's costs for this suit;   and

(f)   Such other relief as this Court may deem just, proper, and equitable.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, belief and recollection.   I have read and signed this affidavit/complaint on this 25th day of March, 2013.

Gregory Tyree Brown #281829
Pro Se Plaintiff
Clallam Bay Corrections Center
1830 Eagle Crest Way   (BE11)
Clallam Bay, WA   98326